UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CNA HOLDINGS, INC. AND<br>CELANESE AMERICAS<br>CORPORATION,<br><br>    *Plaintiffs,*<br><br>v.<br><br>KAYE SCHOLER LLP,<br>ROBERT B. BERNSTEIN,<br>AND MICHAEL D. BLECHMAN,<br><br>    *Defendants.* | § § § § § § § § § § § § § | CIVIL ACTION NO. 3:08CV1032-B |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE

OF COUNSEL
John K. Villa (*Pro hac* motion pending)
David S. Blatt (*Pro hac* motion pending)
Patrick H. Kim (*Pro hac* motion pending)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

George M. Kryder
  State Bar No. 11742900
Gabriela A. Gallegos
  State Bar No. 24040943
VINSON & ELKINS L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas  75201-2975
Telephone:  (214) 220-7700
Fax:  (214) 220-7716

*Attorneys for Defendants Kaye Scholer LLP, Robert B. Bernstein,
and Michael D. Blechman*

# TABLE OF CONTENTS

Page

I.  SUMMARY OF THE ARGUMENT ................................................................................ 1

II.  FACTUAL BACKGROUND ...................................................................................... 4

    A.  The Legal Representation: The New York KoSa Case and The North Carolina MDL Litigation ................................................................................ 4

    B.  The Legal Malpractice and Legal Fees Lawsuits .................................................. 7

III.  THERE IS NO JURISDICTION OVER DEFENDANTS. ......................................... 8

    A.  Plaintiffs Cannot Meet the Legal Standards to Establish Jurisdiction. ................... 8

    B.  Defendants Do Not Have Sufficient Minimum Contacts With Texas To Support The Exercise Of General Jurisdiction. ................................................. 9

        1.  There is no general jurisdiction over Kaye Scholer. ................................... 9

        2.  There is no general jurisdiction over Bernstein or Blechman. .................. 12

    C.  There is No Specific Jurisdiction Over Defendants. ............................................. 12

    D.  Exercising Personal Jurisdiction Over Defendants Would Offend Traditional Notions Of Fair Play And Substantial Justice. ................................... 15

IV.  ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK UNDER 28 U.S.C. § 1404(a). ............ 17

    A.  The Case Could Have Been Brought in the Southern District of New York. .............................................................................................................. 18

    B.  The Private and Public-Interest Factors Both Favor Transfer. ............................. 18

        1.  Private-interest factors ............................................................................. 19

        2.  Public-interest factors .............................................................................. 20

V.  CONCLUSION ........................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alpine View Co. Ltd. v. Atlas Copco AB,*
    205 F.3d 208 (5th Cir. 2000)............................................................................. 8

*Bearry v. Beech Aircraft Corp.,*
    818 F. 2d 370 (5th Cir. 1987)................................................................... 11, 13

*Bergenholtz v. Cannata,*
    200 S.W.3d 287 (Tex. App.—Dallas 2006, no pet.)..................................... 14, 15

*Brand v. Menlove Dodge,*
    796 F.2d 1070 (9th Cir. 1986)......................................................................... 16

*British Aviation Ins. Grp. v. American Eurocopter Corp.,*
    No. 3:96-CV-0392-G, 1997 WL 118425 (N.D. Tex. Mar. 12, 1997)................... 11

*Burger King v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................................ 13, 15

*CitiCapital Commer. Corp. v. First Nat'l Bank,*
    No. 3:04-CV-0302-B, 2005 WL 856886 (N.D. Tex. Apr. 11, 2005) ................... 11

*Claro v. Mason,*
    No. H-06-2398, 2007 WL 654609 (S.D. Tex. Feb. 27, 2007) ....................... 10, 12

*Continental Airlines, Inc. v. American Airlines, Inc.,*
    805 F. Supp. 1392 (S.D. Tex. 1992) .............................................................. 19

*CSR, Ltd. v. Link,*
    925 S.W.2d 591 (Tex. 1996)............................................................................. 8

*Dalton v. R&W Marine, Inc.,*
    897 F.2d 1359 (5th Cir. 1990)........................................................................... 8

*Dibon Solutions, Inc. v. Chugach Alaska Corp.,*
    2008 WL 2354946 (N.D. Tex. 2008) ............................................................... 14

*Dominion Gas Ventures v. N.L.S., Inc.,*
    889 F. Supp. 265 (N.D. Tex. 1995).................................................................. 11

*Dupre v. Spanier Marine Corp.,*
    810 F. Supp. 823 (S.D. Tex. 1993) ................................................................. 17

*Eakin v. Acosta,*
    21 S.W.3d 405 (Tex. App.—San Antonio 2000, no pet.) ................................. 14

*Engelke v. Brown, Rudnick, Berlack, Israels, L.L.P.,*
    2006 N.Y. Slip. Op. 51868U (N.Y. Sup. Ct. 2006) .......................................... 21

*Fielding v. Hubert Burda Media, Inc.,*
    415 F.3d 419 (5th Cir. 2005)............................................................................. 9

Page(s)

*Fluharty v. Lewis, Rice & Fingersh, LLC,*
    No. 3:04-CV-1177-B, slip op. (N.D. Tex. May 15, 2005) ...................................................... 11

*Green v. Burlington Northern Santa Fe Ry.,*
    No. 3:05-CV-1596-L, 2006 WL 154329 (N.D. Tex. Jan. 19, 2006) ...................................... 17

*Gruber Hurst Johansen & Hail, LLP v. Hackard & Holt,*
    No. 3:07-CV-1410-G, 2008 WL 137970 (N.D. Tex. Jan. 15, 2008) ..................................... 14

*Gulf Oil Co. v. Gilbert,*
    330 U.S. 501 (1947) ........................................................................................................... 17

*Harper Macleod Solicitors v. Keaty & Keaty,*
    260 F.3d 389 (5th Cir. 2001) ............................................................................................... 8

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ....................................................................................................... 9, 12

*Hotel Partners v. Craig,*
    993 S.W.2d 116 (Tex. App. Dallas 1994, writ denied) ....................................................... 11

*Hughes Wood Prods., Inc. v. Wagner,*
    18 S.W.3d 202 (Tex. 2000) ................................................................................................. 21

*In re Horseshoe Entertainment,*
    337 F.3d 429 (5th Cir. 2003) .............................................................................................. 18

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) .............................................................................................. 18

*IRA Resources, Inc. v. Griego,*
    221 S.W.3d 592 (Tex. 2007) ............................................................................................... 14

*Irving v. Owens-Corning Fiberglas Corp.,*
    864 F.2d 383 (5th Cir. 1989) .............................................................................................. 13

*Karl Rove & Co. v. Thornburgh,*
    824 F. Supp. 662 (W.D. Tex. 1993) .................................................................................... 11

*Kelly v. Syria Shell Petroleum Dev. B.V.,*
    213 F.3d 841 (5th Cir. 2000),
    *cert denied*, 531 U.S. 979 (2000) ..................................................................................... 9, 12

*Kimko Int'l v. Tien,*
    No. 3:96-CV-0978-R, 1999 WL 261879 (N.D. Tex. Apr. 21, 1999) .............................. 15, 21

*Latshaw v. Johnston,*
    167 F.3d 208 (5th Cir. 1999) ................................................................................................ 9

*Markette v. X-Ray X-Press Corp.,*
    240 S.W.3d 464 (Tex. App.—Houston 2007, no pet.) ...................................................... 14-15

*Matosky v. Manning,*
    No. SA-07-CV-051-WRF, 2007 WL 1512027 (W.D. Tex. 2007) ....................................... 18

*Michiana Easy Livin' Country, Inc. v. Holten,*
    168 S.W.3d 777 (Tex. 2005) ............................................................................................... 13

Page(s)

*Nikolai v. Strait*,
    922 S.W.2d 229 (Tex. App.—Ft. Worth 1996, writ denied) ............................ 12

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ........................................................................ 9

*Paolino v. Argyll Equities, L.L.C.*,
    401 F. Supp. 2d 712 (W.D. Tex. 2005) ........................................................ 12

*Peteet v. Dow Chem. Co.*,
    868 F.2d 1428 (5th Cir. 1989) ...................................................................... 17

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 237 (1981) ............................................................................... 17, 18

*Quicksilver, Inc. v. Academy Corp.*,
    No. 98-CV-1772, 1998 WL 874929 (N.D. Tex. Dec. 3, 1998) ................ 17, 19

*Reed v. Fina Oil and Chem. Co.*,
    995 F. Supp. 705 (E.D. Tex. 1998) .............................................................. 19

*Richard v. R&Q Reinsurance Company*,
    No. 4:07-CV-022A, 2007 WL 1119212 (N.D. Tex. Apr. 13, 2007) .............. 14

*Robertson v. Kiamichi R.R.*,
    42 F. Supp. 2d 651 (E.D. Tex. 1999) ........................................................... 19

*Rush v. Savchuk*,
    444 U.S. 320 (1980) ..................................................................................... 12

*Stangel v. Johnson & Madigan, P.L.L.P.*,
    No. 3:99-CV-1518-D, 1999 WL 1134962 (N.D. Tex. Dec. 8, 1999) ............ 14

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ....................................................................................... 18

*Stroman Realty, Inc. v. Wercinski*,
    513 F.3d 476 (5th Cir. 2008) ....................................................................... 15

*Submersible Sys. v. Perforadora Central, S.A. de C.V.*,
    249 F.3d 413 (5th Cir. 2001) ......................................................................... 9

*Taylor v. Underwood*,
    No. 3:99-CV-2632-X, 2000 WL 123973 (N.D. Tex. Jan. 31, 2000) ........ 10, 12, 14, 15

*Weldon-Francke v. Fisher*,
    237 S.W.3d 789 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ............... 14

*Wilson v. Belin*,
    20 F.3d 644 (5th Cir. 1994) ....................................................................... 9, 10

*Workplaceusa Inc. v. Palmer Plaza Partners*,
    No. 3:04-CV-0019, 2004 WL 2058780 (N.D. Tex. Sept. 15, 2004) ............. 14

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ..................................................................................... 13

Page(s)

## STATUTES

28 U.S.C. § 1404(a) ................................................................................. 16, 17, 21

Tex. Civ. Prac. & Rem. Code Ann. § 17.041-.042 ................................. 8

U.S.C. § 1391(a) .......................................................................................... 18

## OTHER AUTHORITIES

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
   Fed. Prac. & Proc. § 3847 at 370 (1986) ............................................. 17

Defendants Kaye Scholer LLP, Robert B. Bernstein, and Michael D. Blechman ("Defendants") file this Brief in Support of their Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue.

## I.    SUMMARY OF THE ARGUMENT

New York attorneys retained by two New Jersey-based corporations to defend antitrust-related litigation in New York and North Carolina federal courts do not reasonably anticipate that they will be sued in Texas for alleged legal malpractice arising from legal services performed outside of Texas, merely because the corporations later move their operations to Dallas.  Yet, that is precisely what has occurred here.  This case should, therefore, be dismissed for lack of *in personam* jurisdiction or, alternatively, transferred to the Southern District of New York, which already has two related actions pending before United States District Judge Naomi R. Buchwald and provides a more convenient forum for adjudicating all claims based on the location of most of the witnesses and documents.

Kaye Scholer LLP ("Kaye Scholer"), a New York City law firm, and two of its New York-licensed attorneys, Robert B. Bernstein ("Bernstein") and Michael D. Blechman ("Blechman"), were among counsel of record for CNA Holdings, Inc. and Celanese Americas Corporation (collectively, "Celanese") in cases in New York and North Carolina.  This case arises out of alleged errors by Kaye Scholer in discovery from mid-2003 to June 2006. Throughout this period, the Kaye Scholer legal services were performed by lawyers licensed in New York from the law firm's New York City office.  The Celanese entities' legal department— Kaye Scholer's primary contact—was located in New Jersey until April 30, 2006.  Kaye Scholer's representation of Celanese concluded after June 2006.

Predictably, the Plaintiffs' First Amended Complaint ("Complaint") does not identify any alleged malpractice in Texas.  The Complaint does describe a series of alleged discovery errors

from mid-2003 to June 2006 (¶¶ 36-67), virtually all of which occurred prior to the move of Celanese's legal function to Texas on April 30, 2006, and none of which physically occurred in Texas.   Specifically, Plaintiffs assert that Kaye Scholer committed malpractice based on allegedly incorrect professional judgments made in New York and "erroneous" pleadings prepared in New York, which allegedly led a North Carolina federal court on June 6, 2006 to impose $113,000 in discovery sanctions against Celanese for failing to produce certain documents.

The North Carolina court left open whether further sanctions could be considered later, depending on "how seriously [Celanese] can take its obligations henceforth." Exhibit ("Ex.") 1 (Transcript of Hearing dated June 6, 2006, at 45).[1]   Shortly after the sanctions hearing on June 6, 2006, Celanese terminated Kaye Scholer and was represented solely by attorneys from the New York law firm of Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz Benson"), which previously had been serving as co-counsel with Kaye Scholer.   Two years later, in June 2008, on the eve of trial, after having rejected Kaye Scholer's advice back in late 2005 to respond to the plaintiffs' demand to settle the North Carolina case for $5 million, Celanese (represented by Kasowitz Benson) decided to settle the North Carolina price-fixing litigation for $107 million. In the present case, Celanese seek to shift their antitrust liability to Kaye Scholer.

There is no part of this history, nor any statement in the Complaint, that alleges *facts* sufficient to confer personal jurisdiction over Kaye Scholer, Bernstein, or Blechman in Texas. Indeed, the only relationship with Texas is Celanese's relocation after the crucial conduct occurred.   Defendants lack the necessary contacts with Texas to permit this Court to exercise

---

[1] The Court stated that "in terms of sanctions, the court won't conclude its examination of that issue today, but will reserve a final ruling on that matter pending further review of Hoechst's [Celanese] actions between now and the time that the court is in a position to rule on the – ultimately on that issue.  That will give the court an opportunity to see how seriously Hoechst can take its discovery obligations henceforth . . . ." *See* Ex. 1 at 45.

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 2**

general or specific personal jurisdiction; accordingly, the case must be dismissed under FED. R. CIV. P. 12(b)(2).

Alternatively, this case should be transferred to the Southern District of New York, under 28 U.S.C. § 1404(a), to be consolidated with other pending litigation. The Celanese entities currently are defendants in two related actions in the Southern District of New York: (1) a case filed in 2003 against Celanese for fraudulently concealing its participation in an antitrust conspiracy, in which Kaye Scholer represented Celanese (the "KoSa case"), and (2) an action Kaye Scholer filed against Celanese in June 2008 for legal fees and declaratory judgment, arising from the same facts as this case ("legal fees case"). Judge Buchwald is presiding over both of those cases, and it is patently inefficient for a second federal court to consider the same issues.

In order to assess the situs of the witnesses, documents, and the governing law for consideration of a transfer, the Court must understand the issues to be litigated in this case. The principal issues will include those being determined by the New York federal court in the KoSa and legal fees cases, such as:

- whether there is evidence that Celanese participated in an antitrust conspiracy;

- whether a Celanese lawyer then working in New Jersey told Kaye Scholer that certain documents were no longer in Celanese's possession;

- whether lawyers from Kasowitz Benson's New York office (who Celanese retained no later than February 2006) participated in reviewing briefs and correspondence concerning discovery in the North Carolina action that later were criticized and which are the subject of the Complaint;

- whether Celanese's in-house counsel rejected Kaye Scholer's recommendation in 2005 to respond to the plaintiffs' demand to settle the North Carolina case for $5 million;

- how Kasowitz Benson's handling of the case from mid-2006 to the time of settlement impacted the supposed apprehension of further sanctions and the amount of eventual settlement;

- the legal and factual analysis and judgments that went into Celanese's decision to enter into a $107 million settlement; and

- to what extent Kaye Scholer's New York lawyers earned fees which Celanese has refused to pay.

These issues plainly involve parties, documents, witnesses, litigation, and evidence in, as well as the substantive laws of, New York and possibly North Carolina. The Southern District of New York is therefore the most appropriate forum:  venue is proper; the court will have jurisdiction over all the parties; it is most convenient for the parties and witnesses; and transfer is in the interests of justice.

## II.    FACTUAL BACKGROUND

### A.    The Legal Representation: The New York KoSa Case and The North Carolina MDL Litigation

In the 1990s, Celanese manufactured and sold polyester staple fiber.  In December 1998, Celanese sold its polyester business for $1.56 billion to Arteva Specialties S.a.r.l. d/b/a KoSa ("KoSa").   In 2001, the United States Department of Justice informed KoSa that it was conducting a criminal antitrust investigation into several polyester manufacturers, including Celanese.  Shortly thereafter, in April 2001, KoSa requested that Celanese broadly indemnify it.

In March 2002, Celanese retained Kaye Scholer, a New York City law firm, to represent them in connection with KoSa's indemnity demand, as well as any civil antitrust litigation relating to the polyester staple fiber business.  The attorney-client relationship was formed between the New York law firm and the New Jersey-based legal department of the New Jersey companies.  *See* Ex. 2 (Declaration of Michael A. Leonardi ("Kaye Scholer Decl.") at ¶¶ 12-14). Defendants Blechman[2] and Bernstein[3] were among the Kaye Scholer attorneys involved in the

---

[2]   For more than 40 years, Michael D. Blechman has been an attorney in Kaye Scholer's New York City office. *See* Ex. 3 (Declaration of Michael D. Blechman ("Blechman Decl.") at ¶ 3).

engagement, and both were (and are) New York residents.  *See* Exs. 3, 4 (Blechman Decl. ¶ 3; Bernstein Decl. ¶ 3).

In October 2002, KoSa pled guilty to one felony count of conspiring to fix prices in violation of Section One of the Sherman Act and agreed to pay a $28.5 million criminal fine. KoSa's former director of textiles in the United States, Troy Stanley, also agreed to plead guilty, pay $20,000, and serve eight months imprisonment.

On November 3, 2003, KoSa sued Celanese for fraud and indemnification, claiming that Celanese did not disclose their participation in an antitrust conspiracy when selling their polyester staple business to KoSa. That lawsuit is pending before Judge Naomi R. Buchwald in the United States District Court for the Southern District of New York.[4]  Kaye Scholer represented Celanese in the KoSa case through June 2006.

Beginning in 2003, Celanese also was sued in multiple civil antitrust lawsuits relating to their polyester staple fiber business. These cases were consolidated in a multi-district litigation in the United States District Court for the Western District of North Carolina ("MDL Litigation").[5]  Kaye Scholer represented Celanese in the MDL Litigation through June 2006.

During the KoSa case, Celanese produced various documents that were not produced in the North Carolina MDL Litigation. In March 2006, plaintiffs in the MDL Litigation sought, and in June 2006 obtained, sanctions against Celanese for not producing certain of these documents. *See* Ex. 1 (Tr. of June 6, 2006 hearing).

---

[3]   For more than 25 years, Robert B. Bernstein was an attorney working primarily in Kaye Scholer's New York City office. *See* Ex. 4 (Declaration of Robert B. Bernstein ("Bernstein Decl."), at ¶ 3). Since January 2008, Bernstein has been an attorney with Vandenberg & Feliu LLP in New York. *Id.*

[4]   *See Koch Industries, Inc., KoSa B.V., Arteva Specialties, S.á.r.l., and Arteva Services, S.á.r.l. v. Hoechst Aktiengesellschaft, Celanese Aktiengesellschaft, CNA Holdings, Inc. and Celanese Americas Corporation*, No. 03-cv-8679.

[5]   *See In re: Polyester Staple Antitrust Litig.*, MDL Docket No. 03-cv-1516 (Charlotte Div.).

However, no later than February 2006, more than a month *before* plaintiffs filed their sanctions motion in the MDL Litigation, Celanese already had retained another New York City law firm, Kasowitz Benson, first to represent Celanese in the MDL Litigation and, ultimately, to replace Kaye Scholer. *See* Ex. 5 (Bernstein Dep. Tr. Jan. 18, 2007 at 153-61). In that capacity, Kasowitz Benson began reviewing Kaye Scholer's legal work in early 2006. *Id.* In April 2006, Kasowitz Benson entered an appearance in the MDL Litigation as co-counsel for Celanese together with Kaye Scholer. *See* Ex. 6 (Notice of Appearance dated April 19, 2006). Kasowitz Benson thus was co-counsel for Celanese in the MDL Litigation during the time that Celanese now claims inaccurate statements were made to the MDL court concerning the existence of documents at Celanese. *See* Compl. ¶¶ 56-67. Many of the Kasowitz Benson attorneys involved in representing Celanese, including lead counsel, Hector Torres, work in the law firm's New York office and reside nearby. They will be witnesses in this malpractice case and Kaye Scholer's legal fees case.

While Kaye Scholer represented Celanese, the vast majority of the legal services it performed, including for the New York KoSa case and the North Carolina MDL Litigation, were physically performed in New York City by Kaye Scholer lawyers licensed to practice in New York. *See* Ex. 2 (Kaye Scholer Decl. ¶ 13). Even after Celanese relocated operations to Texas (in 2005 or 2006), virtually all of Kaye Scholer's contacts with Celanese took place in New York (or New Jersey, where Celanese's legal function remained until April 30, 2006), not in Texas. *Id.* ¶¶ 13-14. The discovery sanctions motion was filed on March 28, 2006, more than a month before Celanese even moved its legal operations out of New Jersey to Texas. Legal services actually performed in Texas by Kaye Scholer lawyers accounted for approximately 0.271% of the total legal services performed for Celanese when calculated by billed attorney fees. *Id.* ¶ 13.

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 6**

**B.**    **The Legal Malpractice and Legal Fees Lawsuits**

Plaintiffs filed this legal malpractice case against Kaye Scholer and Bernstein on May 29, 2008, in the 101st Judicial District Court, Dallas County, Texas, with a bare-bones 6-page Petition devoid of virtually any facts or details, and for weeks took no steps either to have a summons issued or to serve their Original Petition. Plaintiffs' Original Petition asserted claims against Kaye Scholer and Bernstein based on their representation of Celanese in the KoSa case and MDL Litigation—conduct plainly occurring outside of Texas. There was mention of Bernstein, but no mention of Blechman.

On June 19, 2008, Kaye Scholer sued Celanese in the Southern District of New York for legal fees Celanese owed Kaye Scholer for services in the KoSa case and MDL Litigation ("legal fees case"). *See* Ex. 7 (Complaint filed June 19, 2008). Kaye Scholer also requested a declaration of the extent to which its legal services met the standard of care and were consistent with its fiduciary duties, if any. *Id.* ¶¶ 21-23. Kaye Scholer's Complaint was served on Celanese that same day.

The legal fees suit was assigned to Judge Buchwald because it is related to the KoSa case in which a significant portion of the fees at issue were incurred. Thus, Celanese currently are defendants in two cases pending before Judge Buchwald: (1) the KoSa case, in which Celanese are being sued by KoSa for fraudulently concealing their participation in an antitrust conspiracy, and (2) the legal fees case, in which Kaye Scholer is suing Celanese for legal fees arising out of Kaye Scholer's representation of Celanese in the KoSa case and MDL Litigation.

Later on June 19, Kaye Scholer and Bernstein removed Celanese's legal malpractice action to this Court. As of that time, Celanese still had taken no steps to serve their Texas state court Petition. On June 23, 2008, however, after Kaye Scholer already had filed and served its

New York Complaint, Celanese belatedly served Kaye Scholer and Bernstein with the summons and state court Petition.[6]

On June 25, 2008, Celanese filed Plaintiffs' First Amended Complaint in this Court, for the first time naming Blechman—a senior and distinguished antitrust litigation partner at Kaye Scholer—as a defendant, but not alleging any specific action attributable to him.

## III.    THERE IS NO JURISDICTION OVER DEFENDANTS.

Plaintiffs cannot establish *in personam* jurisdiction over non-residents Kaye Scholer, Bernstein, and Blechman because they do not have substantial, continuous, and systematic general business contacts with Texas, nor did they purposefully direct their activities towards Texas.  Indeed, the *only* fact connecting this lawsuit to Texas is that Celanese apparently moved their headquarters to Dallas shortly before Kaye Scholer's legal representation ended.  That cannot confer personal jurisdiction as a matter of law.

### A.    Plaintiffs Cannot Meet the Legal Standards to Establish Jurisdiction.

In a diversity action, "the law of the forum state, subject to the constitutional limits imposed by the Due Process Clause, controls the ability of a district court to exercise personal jurisdiction over nonresident defendants."  *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 396 (5th Cir. 2001) (citations omitted).  Because the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE ANN. § 17.041-.042, authorizes personal jurisdiction over a nonresident defendant to the fullest extent allowed by the United States Constitution, this Court may assert personal jurisdiction over a nonresident defendant only if it would comport with due process.[7]

---

[6]  That service was ineffective since the state citation was issued the day after removal to this Court had occurred.

[7]  *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990); *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 8**

Consistent with the concept of due process, courts may exercise either general or specific personal jurisdiction over a nonresident defendant.[8]   The plaintiff bears the burden of establishing *prima facie* evidence that a court has either type of personal jurisdiction over a nonresident defendant.[9]   Neither exists here.

**B.    Defendants Do Not Have Sufficient Minimum Contacts With Texas To Support The Exercise Of General Jurisdiction.**

There is no general jurisdiction over Kaye Scholer, Bernstein, or Blechman—and none is alleged—because their contacts with Texas are not "substantial" and "continuous and systematic." *Helicopteros*, 466 U.S. at 414-15.[10]   The Fifth Circuit has observed that the standard of substantial, continuous, and systematic general business contacts "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001) (citation omitted).

General jurisdiction here fails under this demanding standard.   The declarations of the representative of Kaye Scholer, Bernstein, and Blechman contain specific, verified, jurisdictional facts, conclusively showing that a court in Texas should not and, under the law, cannot extend long-arm jurisdiction over Defendants.[11]

**1.    There is no general jurisdiction over Kaye Scholer.**

Plaintiffs' Complaint is devoid of specific allegations, instead resorting to the conclusory and insufficient allegation that Kaye Scholer was "engaging in business in Texas and contracting with one or more Texas residents" and committed unidentified "tortious acts in part in the State

---

[8]   *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 866 (5th Cir. 2001).

[9]   *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citations omitted); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citations omitted).

[10]   *See also Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000), *cert. denied*, 531 U.S. 979 (2000); *Wilson*, 20 F.3d at 650-51.

[11]   *See generally* Exs. 2, 3, 4 (Kaye Scholer Decl. ¶¶ 3-11; Blechman Decl. ¶¶ 3-9; Bernstein Decl. ¶¶ 3-9).

of Texas which damaged Celanese in the State of Texas." Compl. ¶ 9.  The Complaint contains

no allegations concerning Kaye Scholer's conduct in Texas, and the declaration submitted on

behalf of Kaye Scholer establishes facts which clearly negate jurisdiction.  Among other things,

Kaye Scholer has no office, real property, attorneys, registered agents, telephone numbers, or

bank accounts in Texas, and the law firm has no marketing or advertising campaigns specifically

directed toward Texas.[12]  Notably, only 0.271% of the hours billed by Kaye Scholer in the

Celanese engagement is attributable to services performed in Texas based on billed attorney

fees.[13]  As federal courts in Texas have consistently held, such contacts do not constitute the

substantial, continuous, and systematic contacts necessary to impose general personal

jurisdiction:

- In *Taylor v. Underwood*, No. 3:99-CV-2632-X, 2000 WL 123973, at *2 (N.D. Tex. Jan. 31, 2000), Judge Kendall held that it was "beyond credible dispute" that general jurisdiction did not exist over non-resident lawyers who litigated a West Virginia matter for Texas clients, but themselves were not Texas residents, did not come to Texas, did not advertise in Texas, had no registered agents in Texas, were not licensed to practice law in Texas, and did not own property in Texas; and

- In *Claro v. Mason*, No. H-06-2398, 2007 WL 654609, at *6-7 (S.D. Tex. Feb. 27, 2007), Judge Rosenthal rejected general personal jurisdiction where, as here, a non-resident law firm and individual lawyers had no offices, agents, property, bank accounts, regular or ongoing business, advertising, or tax payments in Texas, and where individual lawyers did not reside in and were not licensed to practice law in Texas.[14]

---

[12] *See* Ex. 2 (Kaye Scholer Decl. ¶¶ 3-8).

[13] *Id.* ¶ 13.

[14] *See also Wilson*, 20 F.3d at 650-51 (non-resident lawyer carrying his malpractice insurance through a Texas law firm, giving a legal seminar in the state, and serving as a *pro bono* consultant to a historical society in Dallas was not subject to general jurisdiction when lawyer did not conduct "regular business in Texas," make "all or even a substantial part of their business decisions in Texas," keep "bank accounts in Texas," or maintain files there).

Kaye Scholer represents Texas residents or clients other than Celanese[15] and litigates in Texas courts on behalf of non-Texas clients; although the overwhelming majority of this work is done outside of Texas, these matters may require Kaye Scholer attorneys occasionally to enter Texas.[16] However, such contacts are insufficient for general jurisdiction. First, Kaye Scholer's contacts with Texas for other clients should not even be considered for purposes of personal jurisdiction *in this case*.[17] "When an agent arrives in Texas to represent his principal, only the principal is doing business in Texas." *Hotel Partners v. Craig*, 993 S.W.2d 116, 121 (Tex. App. Dallas 1994, writ denied).[18] Second, the total volume of Kaye Scholer's representation of Texas clients is, under the case law precedent, insufficient to be deemed substantial, continuous, and systematic. Specifically, only 2.57% of Kaye Scholer's revenue from January 1, 2003 to June 30, 2008 can be attributed to Texas clients and only 3.04% to Texas litigation on behalf of non-Texas clients (the overwhelming majority of this work occurred outside of Texas).[19] These are consistent with other cases in which this Court found general jurisdiction to be lacking.[20]

---

[15] From 2003 to mid-2008, approximately 0.39% of Kaye Scholer's clients had a Texas billing address. *See* Ex. 2 (Kaye Scholer Decl. ¶ 9).

[16] *See* Ex. 2 (Kaye Scholer Decl. ¶¶ 9-11).

[17] *See Fluharty v. Lewis, Rice & Fingersh, LLC*, No. 3:04-CV-1177-B, slip op. (N.D. Tex. May 15, 2005) (Boyle, J.) (finding no jurisdiction over non-resident lawyers where Defendants' contacts with Texas occurred in connection with their representation of *other clients* pursuant to attorney-client relationships) (attached as Ex. 8).

[18] *See also Karl Rove & Co. v. Thornburgh*, 824 F. Supp. 662, 672 (W.D. Tex. 1993) ("[A]n agent . . . is not considered to be doing business in a foreign state when such business is done on behalf of a principal.").

[19] *See* Ex. 2 (Kaye Scholer Decl. ¶¶ 9-10).

[20] S*ee, e.g., Dominion Gas Ventures v. N.L.S., Inc.*, 889 F. Supp. 265, 267 (N.D. Tex. 1995) (Solis, J.) (7% of gross revenue insufficient for general jurisdiction); *CitiCapital Commer. Corp. v. First Nat'l Bank*, No. 3:04-CV-0302-B, 2005 WL 856886, at *2 (N.D. Tex. Apr. 11, 2005) (Boyle, J.) (less than 1% of client accounts in Texas considered *de minimis* contact and insufficient for general jurisdiction); *British Aviation Ins. Grp. v. American Eurocopter Corp.*, No. 3:96-CV-0392-G, 1997 WL 118425, at *5 (N.D. Tex. Mar. 12, 1997) (Fish, J.) (finding no general jurisdiction where revenue from Texas clients equaled only one-half of one percent of defendant's total revenue); *see also Bearry v. Beech Aircraft Corp.*, 818 F. 2d 370, 372-76 (5th Cir. 1987).

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 11**

### 2.   There is no general jurisdiction over Bernstein or Blechman.

As with Kaye Scholer, Plaintiffs' Complaint contains no allegations concerning Bernstein's or Blechman's conduct in Texas; indeed, Plaintiffs make no jurisdictional allegation whatsoever against either attorney.   *See* Compl. ¶ 19.   The declarations of Bernstein and Blechman establish that jurisdiction is clearly lacking over them:  among other things, Bernstein and Blechman are residents of New York, not Texas; they are not licensed to practice law in Texas; they have no property, bank accounts, or telephone numbers in Texas; over the past five years, Bernstein has visited Texas fewer than a half-dozen times on business, and Blechman fewer than five times; and neither recalls being to Texas on a personal matter during that time.[21] Notably, this Court must examine separately *each* Defendant's contacts with Texas to determine whether general jurisdiction exists over each Defendant; therefore any contacts Kaye Scholer has with Texas are not attributable to Bernstein or Blechman.[22]  Bernstein and Blechman plainly lack the necessary contacts with Texas to permit exercise of general jurisdiction.

### C.   There is No Specific Jurisdiction Over Defendants.

Specific jurisdiction exists when the nonresident defendant has purposefully directed activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities *in the forum state*.   *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000); *Helicopteros*, 466 U.S. at 414 n.8 (citation omitted) (unlike general jurisdiction, specific jurisdiction requires that the lawsuit "aris[e] out of or relat[e] to"

---

[21] *See* Exs. 3, 4 (Blechman Decl. at ¶¶ 3-9; Bernstein Decl. at ¶¶ 3-9); *Taylor*, 2000 WL 123973, at *2; *Claro*, 2007 WL 654609, at *6-*7; *Paolino v. Argyll Equities, L.L.C.*, 401 F. Supp. 2d 712, 725 (W.D. Tex. 2005) (Rodriguez, J.) (general jurisdiction over a non-resident law firm and lawyer with a Texas client was not supported by the lawyer's two visits to Texas to consult with that client).

[22] *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Nikolai v. Strait*, 922 S.W.2d 229, 241 (Tex. App.—Ft. Worth 1996, writ denied) ("Texas law is clear that a business's contacts may not be imputed to its personnel to establish jurisdiction over them.").

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 12**

the defendant's purposefully directed activities towards the state). As the Fifth Circuit has held, the defendant's contact must spring from "the defendant's purposeful conduct rather than the plaintiff's unilateral activities." *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 385 (5th Cir. 1989) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)).[23]

Here, Plaintiffs cannot establish specific jurisdiction over Kaye Scholer, Bernstein, or Blechman because the alleged activities giving rise to their causes of action did not occur in Texas and do not arise out of legal representation any of them purposefully directed toward Texas. Instead, Kaye Scholer's legal representation began with and, over the course of years, involved two companies each of which was incorporated in Delaware and located in New Jersey. For years, there was no Texas connection to the representation; Kaye Scholer represented its New Jersey-based clients in the New York KoSa fraud-and-indemnity case and in the North Carolina antitrust MDL Litigation. The only contact Kaye Scholer had with Texas in this representation arose much later, solely as a result of Celanese's unilateral decision to relocate to Texas; even then, the Celanese legal function remained in New Jersey until April 30, 2006.[24] The post-relocation events are not appropriately considered when determining specific jurisdiction for several reasons.

First, Celanese's unilateral decision to relocate to Texas was random and fortuitous with regard to Defendants; certainly none of the Defendants purposefully directed their legal

---

[23] *See also Bearry*, 818 F.2d at 374. The Supreme Court of Texas has held similarly. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) ("it is only the defendant's contacts with the forum that count," and not the "unilateral activity of another party or a third person") (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[24] *See* Ex. 2 (Kaye Scholer Decl., Ex. A).

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 13**

representation towards Texas.  Federal district courts in Texas have held that specific jurisdiction

is inappropriate in such circumstances, including in the legal representation context.[25]

Second, apart from Celanese's unilateral decision to move to Texas, the type of contacts

Defendants might have had after the relocation do not qualify as sufficient contacts for personal

jurisdiction.  For instance, contracting with and representing Texas clients does not establish

specific jurisdiction, nor does sending bills or making telephone calls to Texas clients.[26]

Third, *where* the legal services are performed is a "weighty consideration."  *Gruber*

*Hurst Johansen & Hail, LLP v. Hackard & Holt*, No. 3:07-CV-1410-G, 2008 WL 137970 (N.D.

Tex. Jan. 15, 2008) (Fish, J.).  Here, Defendants represented Plaintiffs in litigation in New York

and North Carolina federal courts, militating against a finding of personal jurisdiction.[27]

Fourth, the place where the attorney exercises legal judgment is paramount in

determining the "substantial connection between [a defendant's] contacts and the operative facts

of the litigation," not where that judgment is communicated.  *Markette v. X-Ray X-Press Corp.*,

---

[25] *See, e.g., Richard v. R&Q Reinsurance Company*, No. 4:07-CV-022A, 2007 WL 1119212, at *3 (N.D. Tex. Apr. 13, 2007) (client moving to Texas during course of non-resident lawyer and law firm's representation is "insufficient to show that [the lawyer and law] firm purposefully availed themselves of the benefits and protections of the laws of Texas"); *see also Dibon Solutions, Inc. v. Chugach Alaska Corp.*, 2008 WL 2354946, *4 (N.D. Tex. 2008) (plaintiff "could have easily selected, hypothetically, an office in New Jersey, but [Defendant] would still lack the sufficient minimum contacts with that state as well.").

[26] *See, e.g., Weldon-Francke v. Fisher*, 237 S.W.3d 789, 796-98 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (". . . contracting with and accepting payment from Texas residents for services performed in New Hampshire is insufficient to support specific jurisdiction") (citing *IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 597-98 (Tex. 2007)); *Stangel v. Johnson & Madigan, P.L.L.P.*, No. 3:99-CV-1518-D, 1999 WL 1134962, at *3 (N.D. Tex. Dec. 8, 1999) (non-resident lawyers mailing bills and communicating progress of case to Texas client insufficient to establish specific jurisdiction); *Taylor*, 2000 WL 123973, at *3 ("Negotiating, contracting or even partially performing isolated portions of the contract with resident is not sufficient to confer jurisdiction" over non-resident lawyers who remained in West Virginia, and "[p]hone calls and correspondence do not change the result"); *Bergenholtz v. Cannata*, 200 S.W.3d 287, 296 (Tex. App.—Dallas 2006, no pet.); *see also Workplaceusa Inc. v. Palmer Plaza Partners*, No. 3:04-CV-0019, 2004 WL 2058780, at *3 (N.D. Tex. Sept. 15, 2004) ("...the mere exchange of communications between the forum and foreign states during the course of developing *and carrying out* contracts is insufficient to constitute purposeful availment of the protections of Texas law").

[27] *See Bergenholtz*, 200 S.W.3d at 296 (non-resident lawyer who represented Texas clients in California litigation was not subject to personal jurisdiction in Texas); *Eakin v. Acosta*, 21 S.W.3d 405, 410 (Tex. App.—San Antonio 2000, no pet.) (no specific jurisdiction in legal malpractice case where legal work at issue was performed largely in Florida).

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 14**

240 S.W.3d 464, 468 (Tex. App.—Houston 2007, no pet.).[28]  The legal judgments here were made outside of Texas and were largely communicated outside of Texas as well.

> **D.    Exercising Personal Jurisdiction Over Defendants Would Offend Traditional Notions Of Fair Play And Substantial Justice.**

Because Defendants have not had sufficient minimum contacts to support jurisdiction in Texas, the Court need not examine whether exercising jurisdiction offends traditional notions of fair play and substantial justice.   Were the Court to examine the fairness prong of the *International Shoe* test, however, it would find that personal jurisdiction over Defendants would be inconsistent with Due Process.

Traditional notions of fair play and substantial justice independently defeat the exercise of personal jurisdiction here, as there is "a compelling case that the presence of some other considerations would render justice unreasonable." *Burger King v. Rudzewicz*, 471 U.S. 462 477 (1985).  Courts balance various factors when applying this reasonableness test.[29]

With respect to the first factor—the burden on the defendant—that burden here is high: Defendants have no office, real property, or attorneys in Texas.  In contrast, the second factor— the interest of the forum state in adjudicating this dispute—is minimal, as Celanese resided in New Jersey and Delaware for most of the legal representation; indeed, the vast majority of Kaye Scholer's contacts with Celanese occurred in New York and New Jersey.[30]

---

[28] *See also Taylor*, 2000 WL 123973, at *3 (malpractice of non-resident attorney representing Texas client in West Virginia litigation "must have arisen as the result of the attorney's actions, or lack thereof, *in* West Virginia"); *Bergenholtz*, 200 S.W.3d at 296 (malpractice claims involving non-resident lawyer's litigation of California lawsuit "arises out of legal advice given in California...").

[29] *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008) (citation omitted) (factors include "(1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies").

[30] *See Kimko Int'l v. Tien*, No. 3:96-CV-0978-R, 1999 WL 261879, at *2 (N.D. Tex. Apr. 21, 1999) (Buchmeyer, C.J.) (no personal jurisdiction in Texas over California lawyer because the lawyer "is an attorney licensed and

The third and fourth factors—plaintiffs' interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of the controversies—are not well-served by this action, as two related lawsuits are pending in federal court in New York against Celanese in which the same issues will be decided as in this case. Moreover, either New York or North Carolina law will apply in this case.  Thus, a Texas court would have to engage in a complex choice-of-law analysis and then analyze, interpret, and apply New York or North Carolina substantive law.

The fifth factor—the shared interest of the several states in furthering fundamental substantive social policies—is not met, as the case involves New York lawyers representing New Jersey and Delaware clients in New York and North Carolina courts.

Finally, because none of the alleged conduct relevant to this lawsuit occurred in Texas (*e.g.*, the formation of an attorney-client relationship, or Defendants' performance of legal services), the majority of the material witnesses and evidence will be located outside of Texas. Thus, not only would Defendants be forced to travel a significant distance to defend the action in Texas, but documents and witnesses would have to be transported here from outside of Texas as well.[31]  Important witnesses from New York may not be required to testify at trial, relegating the parties to depositions, which is a poor substitute.  This dispute would be more efficiently resolved where the evidence and the witnesses are located and where the alleged conduct giving rise to Plaintiffs' claims occurred—in this instance, New York.[32]

---

practicing in California [so] California, and not Texas, has an interest in adjudicating attorney negligence and malpractice claims").

[31] *See* Ex. 2 (Kaye Scholer Decl. ¶ 15).

[32] *See Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986) ("The site where the events in question took place or where most of the evidence is located usually will be the most efficient forum.").

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 16**

## IV.   ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK UNDER 28 U.S.C. § 1404(a).

Even if the Court determines that it has jurisdiction, or chooses not to reach this issue at present, it nonetheless should transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  Under section 1404(a), when the convenience of the parties and the interest of justice indicate that the case should be adjudicated in a different forum, a court may transfer the action to the more convenient forum.[33]

Transfer of venue under section 1404(a) is at the discretion of the court, which should consider "'all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Green v. Burlington Northern Santa Fe Ry.*, No. 3:05-CV-1596-L, 2006 WL 154329 (N.D. Tex. Jan. 19, 2006) (Lindsay, J.) (citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FED. PRAC. & PROC. § 3847 at 370 (1986))).  Notably, "the availability and convenience of witnesses and parties, is perhaps the most important factor in determining whether or not to transfer a case under § 1404(a)."  *Quicksilver, Inc. v. Academy Corp.*, No. 98-CV-1772, 1998 WL 874929, at *2 (N.D. Tex. Dec. 3, 1998) (Buchmeyer, J.) (citing *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993)).

Here, the Southern District of New York is clearly the most appropriate forum.

---

[33] *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 237, 247-49 (1981); *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 507-08 (1947).

### A.      The Case Could Have Been Brought in the Southern District of New York.

The threshold question under section 1404 is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). That is the case here.

Federal courts have jurisdiction over this matter because of the parties' diversity of citizenship. Therefore, venue is governed by 28 U.S.C. § 1391(a), which lists three potential venues for diversity actions. The Southern District of New York is an appropriate venue for both the first and second reasons identified in the statute: (1) all Defendants are residents of the Southern District of New York; and (2) a substantial amount of the legal services provided by Kaye Scholer to Celanese was performed in New York, and the attorneys involved with those cases (including Bernstein and Blechman) worked in Kaye Scholer's New York City office.

### B.      The Private and Public-Interest Factors Both Favor Transfer.

Because Plaintiffs' suit could have been filed in New York, the Court must determine whether transfer is appropriate based on an "individualized, case-by-case consideration." *Matosky v. Manning,* No. SA-07-CV-051-WRF, 2007 WL 1512027, at *2 (W.D. Tex. 2007) (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)). The Fifth Circuit has held that "the plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003). The Fifth Circuit also has outlined "a number of public and private interest factors," none dispositive, that the Court properly may use to determine the appropriateness of transfer. *Volkswagen*, 371 F.3d at 203 (citing *Piper Aircraft,* 454 U.S. at 241 n.6).[34] Here, both the

---

[34] The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 18**

private and public-interest factors weigh heavily in favor of transfer to the Southern District of New York.

### 1.    Private-interest factors

The private-interest factors generally concern ease of access to evidence, either physical evidence or testimony from witnesses.  Thus, although a plaintiff's choice of forum is often given significant weight, a court deciding transfer is *not required* to exercise a strong presumption in favor of the plaintiff's choice of forum.[35]  "[D]eference to a plaintiff's choice of forum will be diminished when the location of the defendant and witnesses, location of evidence and the alleged injury all point to a forum other than that selected by the plaintiff." *Quicksilver*, 1998 WL 874929, at *4.[36]

These private interest factors substantially weigh in favor of transfer.  Other than Plaintiffs (who relocated to Texas), the majority of the fact witnesses are located in the Southern District of New York.[37]  At least three groups of individuals will be called upon to provide testimony in Plaintiffs' legal malpractice lawsuit.  First, current and former attorneys from Kaye Scholer will offer testimony relating to services performed for Celanese and the key events relating to Plaintiffs' claims.  All of these witnesses are located in or near New York City. Second, attorneys from Kasowitz Benson, who also provided legal advice to and represented Celanese in the same MDL lawsuit at the same time as Kaye Scholer was allegedly engaging in

---

The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. *See id.*

[35] *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F. Supp. 1392, 1395 (S.D. Tex. 1992).

[36] *See also Reed v. Fina Oil and Chem. Co.,* 995 F. Supp. 705, 714 (E.D. Tex. 1998) ("deference to plaintiff's choice of forum disappears when the lawsuit has no connection" to chosen venue).

[37] *See Robertson v. Kiamichi R.R.,* 42 F. Supp. 2d 651, 657 (E.D. Tex. 1999) ("[V]enue is considered convenient in the district or division where the majority of witnesses are located.").

malpractice and two years later, after the termination of Kaye Scholer, on the $107 million settlement, also will be called to provide testimony. Virtually all of the Kasowitz Benson attorneys who worked with Kaye Scholer and on the settlement are located in or near New York City, including the lead counsel who personally interacted with Kaye Scholer.[38] Third, the in-house attorneys and other employees of Celanese are expected to provide testimony. While these attorneys lived near New York and New Jersey, some of them moved to Texas when Celanese unilaterally relocated their headquarters from New Jersey to Texas.

These facts underscore that multiple private-interest factors favor transfer, and that none favors keeping this case in this Court. Two of the three groups of live witnesses (and virtually all of the non-party witnesses) reside in or near New York City and the availability of compulsory process to secure the attendance of witnesses strongly favor the Southern District of New York. Given that the Celanese entities have been defendants in the Southern District of New York for more than four years, they cannot credibly claim that that court is foreign to them.

### 2.    Public-interest factors

Multiple public-interest factors similarly favor transfer. First, the administrative difficulties flowing from court congestion favor transfer. A single judge in the Southern District of New York is currently presiding over two cases involving the same facts and circumstances, and the Celanese entities are defendants in both cases. That court necessarily will be deciding in the KoSa case whether Celanese engaged in an antitrust conspiracy, as well as whether an antitrust violator may shift liability to a third party—issues also raised by this case. Efficient judicial administration counsels that one federal judge and one federal court consider these related matters, rather than burdening two federal judges and courthouses with the same issues.

---

[38] The Complaint also refers to attorneys at Baker & Botts, describing it as "a Texas firm." The Baker & Botts lawyers who may be witnesses in this case worked in Washington, D.C., which would be far more convenient to New York.

Second, the local interest in having localized issues decided at home also favors transfer. The interest of New York in adjudicating the conduct of New York attorneys is considerable.[39] In contrast, the interest of Texas in the underlying conduct is fortuitous, resulting solely from Celanese's unilateral decision to move from New Jersey to Texas.

Third, the familiarity of the forum with the law that will govern the case also favors transfer. While it is not yet determined whether New York or North Carolina substantive law will apply, as the legal analysis is fact- and factor-driven, one thing is certain: Texas law will not apply, as the events giving rise to Plaintiffs' claims involve New York attorneys litigating lawsuits in New York and North Carolina.[40] If the law to be applied is New York, the federal court in the Southern District of New York would likely be more familiar with that law.

Fourth, the avoidance of unnecessary problems of conflict of laws or the application of foreign law favors transfer, as there is an advantage to having the Southern District of New York determine whether the laws of New York or North Carolina apply, as opposed to the Northern District of Texas analyzing the laws and interests of two foreign jurisdictions.

In sum, the interests of justice require that this case be transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

---

[39] *See, e.g., Kimko Int'l*, 1999 WL 261879, at *2 (finding no personal jurisdiction in Texas over California lawyer; the lawyer "is an attorney licensed and practicing in California [so] California, and not Texas, has an interest in adjudicating attorney negligence and malpractice claims").

[40] *See Engelke v. Brown, Rudnick, Berlack, Israels, L.L.P.*, 2006 N.Y. Slip. Op. 51868U (N.Y. Sup. Ct. 2006) (significant interest test determines choice of law in New York); *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (most significant relationship test determines choice of law in Texas).

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 21**

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this case for lack of personal jurisdiction.    Alternatively, Defendants respectfully request that the Court transfer this case to the United States District Court for the Southern District of New York.

Respectfully submitted,

/s/ George M. Kryder
George M. Kryder
  State Bar No. 11742900
Gabriela A. Gallegos
  State Bar No. 24040943
VINSON & ELKINS L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201-2975
Telephone: (214) 220-7700
Fax: (214) 220-7716

*Attorneys for Defendants Kaye Scholer LLP, Robert B. Bernstein, and Michael D. Blechman*

OF COUNSEL
John K. Villa (*Pro hac* motion pending)
David S. Blatt (*Pro hac* motion pending)
Patrick H. Kim (*Pro hac* motion pending)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

## CERTIFICATE OF SERVICE

I certify that on July 7, 2008, I electronically filed the foregoing document with the District Clerk for the U.S. District Court, Northern District of Texas, using the CM/ECF system of the Court and have served copies on the following attorneys of record:

Paul J. Zoeller
Thomas P. Ludwig
Kasowitz, Benson, Torres & Friedman, LLP
700 Louisiana St., Suite 2200
Houston, TX 77002-2730


/s/ George M. Kryder
_____

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE – Page 23**