UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CNA HOLDINGS, INC. and | § | |
| CELANESE AMERICAS | § | |
| CORPORATION, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-1032-B |
| | § | |
| KAYE SCHOLER LLP, et al. | § | |
| | § | |
| Defendants. | § | |

## ORDER

This is a professional negligence/legal malpractice case based on Defendants' alleged mishandling of discovery in an antitrust multidistrict litigation ("MDL") in North Carolina that began in 2002 (the "Relevant Litigation"). Plaintiffs CNA Holdings, Inc. ("CNA") and Celanese Americas Corporation (collectively, "Celanese") allege that Defendant law firm Kaye Scholer, LLP ("Kaye Scholer"), its partner Michael Blechman, and its special counsel Robert Bernstein severely mishandled discovery by failing to adequately search for and produce documents on behalf of Celanese in breach of their fiduciary duties and duty of care owed as attorneys to Plaintiffs. Having considered Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Or, Alternatively, To Transfer Venue (doc # 8), Plaintiffs' Response, Defendants' Reply, and all evidence and argument in support and opposition, the Court finds the Motion meritorious and it is hereby GRANTED as set forth below.

# I.

# BACKGROUND

## 1. History of Plaintiffs' Business and Initial Involvement with Defendants

Plaintiff CNA is a chemical manufacturer formerly in the business of the manufacture and sale of polyester staple fiber ("PSF").  (Compl. ¶ 16).[1]  In December 1998, CNA's PSF business was sold by its parent company Hoescht Aktiengesellschaf ("Hoescht") to Arteva Specialities S.a.r.l. d/b/a KoSa ("KoSa").  (Compl. ¶ 16).  Celanese thereafter was uninvolved in the PSF business.  In 2000, the Department of Justice ("DOJ") began a grand jury investigation of potential criminal violations of the federal antitrust laws by companies in the PSF business, alleged to have commenced in September 1999.  (Compl. ¶ 17).  Despite the fact that the DOJ investigation involved events occurring after the 1998 sale of CNA's PSF business to KoSa, in April 2001, KoSa informed Hoescht that it was seeking indemnity from Hoescht for the DOJ investigation and contended that Hoescht had breached the 1998 sales agreement by failing to disclose that it had engaged in unlawful anti-competitive conduct prior to the 1998 sale.  (Compl. ¶¶ 17, 19).

To address the indemnity demand from KoSa and the DOJ investigation, in May 2001, Celanese retained law firm Baker Botts, through its Washington, D.C. office.  (Compl. ¶ 20).  In January 2002, Baker Botts contacted the DOJ to determine whether the DOJ actually was conducting an investigation of the PSF industry.  (Compl. ¶ 20).  The DOJ informed Baker Botts that it was investigating the PSF industry and eventually requested copies of travel and expense reports from 1995 to December 1998 for Grover Smith, former Celanese Vice President for the

---

[1]The operative Complaint is Plaintiffs' First Amended Complaint, filed June 25, 2008.

North American PSF business, and some of his employees ("Smith Documents").  (Compl. ¶ 21).

Celanese and Baker Botts searched for those documents, and certain other documents related to the

PSF business.  (Compl. ¶ 22).  Kaye Scholer became involved in the process around this time, as it

had been retained by Celanese in March 2002 in connection with the KoSa allegations in the 2001

indemnity request.[2]  (Compl. ¶ 23).  Celanese asked Baker Botts and Kaye Scholer to work together

to review documents and share information.   (Compl. ¶ 23).  Baker Botts ultimately produced the

Smith Documents to the DOJ on August 7, 2002.  (Compl. ¶ 27).  In September 2002, the DOJ

informed Celanese that it would not be charged in connection with the PSF investigation.  (Compl.

¶ 28).

However, as a result of the DOJ investigation, KoSa and the head of its PSF business, Troy

Stanley, were charged and pled guilty to violations of the Sherman Act in December 2002.  (Compl.

¶ 18).  Beginning in September 2002, multiple antitrust actions were filed by individuals, and as class

actions, against KoSa and others in courts across the United States.  (Compl. ¶ 34).  Those cases,

none of which were against Celanese, were consolidated in an MDL in federal court in North

Carolina in April 2003 ("Relevant Litigation").  (Compl. ¶ 34).  Between March 2003 and October

2004, five individual actions were filed against Celanese by former PSF purchasers in federal court

in North and South Carolina.  (Compl. ¶ 35).  Those actions were also consolidated into the

Relevant Litigation.  (Compl. ¶ 35).[3]  Defendant Bernstein was the lead attorney representing

---

[2] Kaye Scholer was also retained in March 2002 to represent Celanese in any potential civil antitrust litigation arising from the DOJ investigation.  (Compl. ¶ 23).  Kaye Scholer, particularly Blechman, has a long history with Celanese–having been retained on a number of matters over several years. (Walker Decl. ¶7).

[3]The plaintiffs in those cases are hereinafter collectively referred to as the "MDL Plaintiffs."

Celanese in the Relevant Litigation throughout Kaye Scholer's involvement.  (Walker Decl. ¶ 6).

Until at least November 2005, Celanese Associate General Counsel Michael Reap was responsible for managing the Relevant Litigation.  (Walker Decl. ¶ 14).  Mr. Reap was located at Celanese's corporate headquarters in Bedminster, New Jersey for about the first two years of the Relevant Litigation.  (Walker Decl. ¶ 12).  Relocation of Celanese's headquarters, including Mr. Reap's position, to Dallas, Texas was completed around June 2005.  (Walker Decl. ¶ 12).  However, Mr. Reap continued to communicate with Kaye Scholer from his New Jersey office until at least March 2006, when he informed Kaye Scholer that Celanese Americas Corporation would be closing its New Jersey office and relocating its headquarters to Dallas, Texas.  (Leonardi Decl. at Ex. A). Effective April 30, 2006, Mr. Reap asked Kaye Scholer to send any bills to him in Dallas. (*Id.*).

Prior to November 2005, Defendants had not communicated with any Celanese lawyer in Texas about the Relevant Litigation.  However, in November 2005, Celanese in-house counsel Ms. Jeanne Walker, located in Dallas, became involved in the relevant litigation for the first time. (Walker Decl. ¶ 12).  Defendants thereafter began regularly corresponding with in-house Celanese counsel in Dallas.  (Walker Decl. ¶ 13).  Defendant Bernstein also attended two depositions in the Relevant Litigation in Texas in April 2006 and attended one meeting with Celanese in Dallas on June 21, 2006.  (Walker Decl. ¶¶ 17-18).  Defendant Blechman is not alleged to have been to Texas in association with the Relevant Litigation.  Over the past five years, Defendants Blechman and Bernstein have each been to Texas fewer than six times on business[4] and never for a client who is

---

[4]One of these visits was Defendants Blechman and Bernstein's first meeting in Texas with Celanese, which Defendants initiated in April 2005 to solicit additional business for Kaye Scholer from Celanese General Counsel Curt Shaw.  (Walker Decl. ¶ 12).

a Texas resident, other than Celanese.[5]  (Blechman & Bernstein Decls. ¶¶ 9).

### 2. Procedural History of the Relevant Litigation

As noted above, the Relevant Litigation is a MDL consolidated in federal court in North Carolina.  On June 30, 2003, Kaye Scholer served its Rule 26(a) initial disclosures to the MDL Plaintiffs, stating that "except for certain archived miscellaneous files," all documents pertaining to the operation of Celanese's PSF business had been transferred to KoSa when it bought the business in 1998.  (Compl. ¶ 36).  On July 15, 2003, the MDL Plaintiffs served Celanese with requests for the production of documents seeking various documents regarding the PSF business.  (Compl. ¶ 37). In response, on September 9, 2003, Kaye Scholer produced only the 220 pages of Smith Documents that Celanese had provided to the DOJ in August 2002.  (Compl. ¶ 38).  Kaye Scholer also again represented in Celanese's Responses and Objections to the Request for Production, served on September 17, 2003, that all other responsive documents Celanese may have once had were transferred to KoSa upon its purchase of the PSF business.  (Compl. ¶ 38).  On October 2, 2005, Kaye Scholer told the North Carolina court that Celanese "had made our production [and] met our production requirements."  (Compl. ¶ 47).  Kaye Scholer repeated its prior representation again on December 13, 2005 in a letter to the MDL Plaintiffs stating that all of the documents Celanese had related to the "production, marketing, and sale of polyester staple from 1995 through 1998" were transferred to KoSa in 1998.  (Compl. ¶ 48).  Kaye Scholer made the same representation to the MDL Plaintiffs again on January 10, 2006. (Compl. ¶ 56).

---

[5]Defendants Blechman and Bernstein also testify that they are not licensed to practice law in Texas, own no real or personal property in the state, and have never visited for personal reasons. (Blechman & Bernstein Decls. ¶¶ 3-8).

Unconvinced, in February 2006, the MDL Plaintiffs served interrogatories on Celanese regarding its document search and production.  (Compl. ¶ 57).  On March 1, 2006, the MDL Plaintiffs also noticed a 30(b)(6) deposition asking for a Celanese representative to discuss the document search and production for the Relevant Litigation.  (Compl. ¶ 57).  Kaye Scholer served Celanese's responses to interrogatories on March 15, 2006, reiterating that all PSF documents were transferred to KoSa upon the sale of the business in 1998.  (Compl. ¶ 58).  Fact discovery in the Relevant Litigation also closed on March 15, 2006.  (Compl. ¶ 40).  However, days later, Kaye Scholer revealed to the MDL Plaintiffs, for the first time, that Celanese had 80-85 boxes of documents that were responsive to previous requests for production ("Due Diligence Documents"). (Compl. ¶ 59).

Plaintiffs moved for sanctions based on Celanese's late disclosure of responsive documents. (Compl. ¶ 60).  In opposition to that motion, Defendant Bernstein represented that the Due Diligence Documents were just duplicate copies of documents that had all already been produced to the MDL Plaintiffs in the Relevant Litigation by co-defendant KoSa.  (Compl. ¶ 63).  Bernstein also stated that the Due Diligence Documents were the only files that Celanese had that it had not independently searched for responsive documents.  (Compl. ¶ 62).  On May 10, 2006, Defendant Bernstein further testified that after review of the Due Diligence Documents, only 3,155 pages were "potentially relevant" or "relate[d] to polyester staple."  (Compl. ¶ 64).

The North Carolina court held a hearing on the plaintiff's sanctions motion on June 6, 2006. (Compl. ¶ 65).   During that hearing, Kaye Scholer again represented that all of the Due Diligence documents had been produced to the MDL Plaintiffs by KoSa in 2004.  (Ex. 1 to Def.'s Mot to Dism. at App. 004, 032, 037).  Kaye Scholer continued to represent that only 3,155 pages of the documents

were "related primarily to polyester staple" and that all of the Celanese documents concerning the PSF business had been transferred to KoSa in connection with its 1998 purchase of the Celanese PSF business. (Ex. 1 to Def.'s Mot to Dism. at App. 005, 009, 035). Kaye Scholer also represented that it did not know about the existence of the Due Diligence Documents in 2003 and only learned of them in "late 2004." (Ex. 1 to Def.'s Mot to Dism. at App. 033). At the conclusion of the hearing, the court sanctioned Celanese for discovery abuse. (Ex. 1 to Def.'s Mot to Dism. at App. 044-047).

### 3. Subsequent Events

In July 2006, Celanese terminated Kaye Scholer's representation in the Relevant Litigation, which eventually settled in May 2008. (Compl. ¶¶ 68, 81). On May 29, 2008, Celanese filed suit in Texas state court against Kaye Schole alleging, *inter alia*, legal malpractice and breach of fiduciary duty. (Doc #1). Defendants removed the Texas state court action to this Court on June 19, 2008. (*Id.*). All of Plaintiffs' claims are based on its allegations that Defendants (1) failed to produce documents that they should have, (2) failed to search for documents to produce, and (3) misrepresented the search they conducted and the non-existence of relevant documents to the plaintiffs and the court in the Relevant Litigation. (Compl. ¶¶ 85, 90, 94-95). Also on June 19, 2008, Defendants filed an action in federal court in the Southern District of New York seeking a declaratory judgment that they did not commit malpractice in association with the Relevant Litigation and seeking payment of fees incurred in that representation. (Compl. ¶ 83). The New York court stayed that action pending the resolution of the instant Motion to Dismiss. (Ludwig Decl. at Ex. P).

Defendants allege that this Court does not have personal jurisdiction over them and should therefore dismiss this case or, alternatively, transfer the matter to the court in New York. Plaintiffs

respond that this Court has both general and specific jurisdiction over each Defendant based on Defendants' intentional contacts with Texas.

## II.

## ANALYSIS

### 1.      Jurisdictional Standards

A plaintiff bears the burden of establishing a trial court's jurisdiction over each defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). If an evidentiary hearing is not held, a plaintiff need only establish a prima facie case of jurisdiction; poof by a preponderance of the evidence is not required. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). In deciding whether the plaintiff has made a prima facie case, non-conclusory factual allegations in the Complaint must be taken as true. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir.1999). The Court may also consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Spademan*, 772 F.2d at 1192. All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

"A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a forum state court." *Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994). A Texas state court may exercise jurisdiction over a non-resident if two preconditions are met: (1) the nonresident must be amenable to service of process under Texas's long-arm statute and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the Constitution. *Jones*, 954 F.2d at 1067. Because Texas's long-arm statute has been held to extend

to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it should reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Jones*, 954 F.2d at 1068.

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Id.* (citation omitted). To demonstrate specific jurisdiction, the plaintiff must establish that the defendant in question undertook some activity in, or purposefully directed some act at, Texas ***and*** that the plaintiff's claims arise out of or result from those activities. *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 325 (5th Cir.1996)(emphasis added).

"General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted). A plaintiff's own activity, without more, cannot be the basis for the exercise of jurisdiction over a non-resident. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). "Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). The analysis ultimately reduces to whether the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thereby invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

### 2.    Specific Jurisdiction

Specific jurisdiction over a non-resident exists when a plaintiff's cause of action arises out of the defendant's contacts with the forum. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). The defendant must have purposefully directed his activities at residents of the forum state and the litigation brought by those residents must arise from and relate to the defendant's activities in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Plaintiffs argue that Defendants directed their activities at Texas in three ways: (1) Defendants continued to represent Celanese in the Relevant Litigation after Celanese moved its headquarters from New Jersey to Texas, (2) Defendants regularly communicated with Celanese in Texas during the Relevant Litigation, and (3) during their communications with Celanese in-house counsel in Texas, Defendants concealed their alleged discovery misconduct.[6] Pl.'s Resp. Br. at 16-17. Defendants argue that these limited contacts are insufficient to support an exercise of specific jurisdiction. The Court agrees.

### A.    Purposeful Direction of Activities

First, it is incongruous to suggest that Kaye Scholer "purposefully availed" itself of the benefits

---

[6]Plaintiffs also argue that the majority of Defendants' alleged acts of malpractice occurred after Celanese became a Texas resident, however, the Court does not view this allegation as a separate allegation of contact with Texas. Analysis of this point is subsumed in the examination of Plaintiff's claims below.

of Texas by not abandoning its representation of Celanese upon the Celanese move to Dallas. Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction. *Burger King,* 471 U.S. at 476. It is well-settled that "[a] plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state." *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983); *see also Patterson v. Dietze*, 764 F.2d 1145, 1147 (5th Cir. 1985) (noting that purposeful availment cannot be inferred from "the mere fortuity that the plaintiff happens to be a resident of the forum"). Celanese's move to Texas cannot be seen as anything other than a unilateral action resulting in merely limited fortuitous contacts with Texas for Defendants. Given their ethical obligations and the years of work already put into the Relevant Litigation prior to Celanese's move to Texas, Defendant Kaye Scholer cannot be said to have had a real choice not to continue its representation of its client after Celanese's counsel transferred to Texas.

Celanese's reliance on cases such as *Schutze v. Springmeyer*, 989 F. Supp. 833, 836 (S.D. Tex. 1998), in which defendants originally contracted with Texas residents are inapposite in this situation involving an ongoing relationship. This case is far more factually analogous to a recent case in this district–*Richard v. R&Q Reinsurance Co.*, No. 4:07-CV-022-A, 2007 WL 1119212, at *3 (N.D. Tex. Apr. 13, 2007)–in which the Court found insufficient contacts for specific jurisdiction. In *Richard*, the plaintiff was an Indiana resident who contracted with Indiana counsel to represent her in a lawsuit in Indiana. *Id.* at *1. Ten months before the lawsuit settled, the plaintiff moved to Texas and thereafter received communications from her lawyers while in Texas. Later, the then-Texas resident plaintiff sued her former attorneys in Texas alleging malpractice based on representations concerning the terms of the settlement that the lawyers allegedly made in Indiana. *Id.* The Court

-11-

found that the plaintiff's move to Texas prior to the case being settled, the subsequent settlement payments received in Texas, and implicitly her lawyers' communications with her in Texas, were insufficient to show that the defendants purposefully availed themselves of the benefits and protections of Texas law. *Id.* at *3.

Just as in *Richard*, here, Defendant Kaye Scholer originally contracted with Plaintiffs when Celanese resided in New Jersey. Kaye Scholer represented Plaintiffs in the Relevant Litigation in North Carolina and another suit in New York. Kaye Scholer's only contact with Texas was its communications with Celanese after the Celanese move. Just as the *Richard* plaintiff's claims were based on alleged representations made in Indiana, Celanese's malpractice allegations are also based on representations Kaye Scholer made in other states–New York and North Carolina– in connection with the Relevant Litigation being litigated in North Carolina. Celanese's attempt to distinguish itself from *Richard* is not well-taken. Celanese argues only that in addition to its own relocation to Texas, "Defendants' other contacts with the forum, are sufficient to show that Defendants purposefully availed themselves of the benefits and protections of the laws of Texas." Pl.'s Brief at 19, n. 45. However, Celanese has not identified a single act of Defendant Kaye Scholer within the forum that is not a direct result of Celanese's choice to relocate its legal function, its general counsel, and its headquarters in Texas.[7]

Moreover, contrary to Celanese's implication, the Fifth Circuit has repeatedly found

---

[7]Any reliance by Celanese on Defendant Kaye Scholer's solicitation of business from its general counsel in Texas in 2005 is misplaced as while solicitation may generally be relevant to the issue of general jurisdiction, it has no bearing on the issue of specific jurisdiction.

insufficient contacts even when the plaintiff was a Texas resident throughout the relevant period.[8]

In *Moncrief*, the Fifth Circuit found no specific jurisdiction over a foreign defendant who entered into

a contract with the plaintiff knowing that it was a Texas resident. *Moncrief Oil Int'l, Inc. v. OAO

Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). The court noted that although it was foreseeable that

the plaintiff would perform many of its duties in Texas, the contract did not require performance in

Texas, was centered outside of Texas, and although plaintiff was based in Texas, it is an international

company with offices and projects around the world. *Id.* at 312. *See also Jones*, 954 F.2d at 1068-

1069 (finding no personal jurisdiction where defendant company contracted with a Texas resident

regarding exploration work in the Sudan and the only Texas activity was provision of funds,

insurance, and employees for the project).

There is far less support for the exercise of personal jurisdiction over Kaye Scholer than there

was for the defendants in *Moncrief* and *Jones*. Unlike those defendants, Defendant Kaye Scholer did

not voluntarily contract with a Texas resident. It is undisputed that Celanese's headquarters was in

New Jersey in 2002, when Kaye Scholer's representation of Celanese in the Relevant Litigation

began. Further, even after Celanese moved its headquarters, it is equally undisputed that all of Kaye

Scholer's legal contacts at Celanese on the Relevant Litigation were in New Jersey until at least

November 2005.[9]   As in *Moncrief*, performance of the contract–the provision of legal

---

[8]*Trinity Indus., Inc. v. Myers & Assocs., Ltd*, 41 F.3d 229, 231 (5th Cir. 1995), is distinguishable for the same reason as *Schutze*, as the defendant law firm originally contracted with a Texas resident and represented that resident in multiple matters in Texas. *Streber v. Hunter*, 221 F.3d 701, 718-719 (5th Cir. 2000), also involves an original contract with a Texas resident and alleged malpractice arising out of statements made in Texas.

[9]Plaintiffs' in-house counsel Ms. Walker testified that fellow in-house counsel Mr. Reap was responsible for managing the Relevant Litigation at least until November 2005. (Walker Decl. ¶14). Although Ms. Walker testified that Mr. Reap's position was transferred to Texas in June 2005, she does

-13-

services–certainly centered outside of Texas, as Kaye Scholer does not have an office in Texas and the primary lawyers working on the Relevant Litigation were resident in Kaye Scholer's New York office.  Further, the Relevant Litigation took place in North Carolina.  Communications from Kaye Scholer to the MDL plaintiffs were made to attorneys in North and South Carolina and Alabama.[10] Other than two depositions in Texas in 2006, there is no evidence that any of the Relevant Litigation took place in Texas or otherwise touched Texas.[11]

The case of *Stangel v. Johnson & Madigan, PLLP*, No. 3:99-CV-1518-D, 1999 WL 1134962 (N.D. Tex. Dec. 8, 1999) *aff'd* No. 00-10038, 2000 WL 1056294 (5th Cir. Jul. 27, 2000) delivers another blow to Celanese's. case for specific jurisdiction over Kaye Scholer. In *Stangel*, the Court found no specific jurisdiction over a Minnesota law firm that had contracted with a Texas resident to provide legal services in connection with property in Minnesota.  *Id*. at 2.  Plaintiff argued that the defendants' communications to him in Texas informing him of case progress, including mailing documents for his signature and bills, constituted minimum contacts.  *Id.*  In rejecting that argument, the Court observed that the plaintiff's malpractice claims were based on defendants' conduct in representing him in Minnesota.  *Id.* at *3.  Similarly, in this case, Defendant Kaye Scholer's only contacts with Texas were in the course of communicating with Celanese about litigation in another state.  Further, Celanese's claims are based on Kaye Scholer's representation in the Relevant

---

not testify that he moved there at that time.  (*Id.*).  Further, the evidence shows that until at least March 2006, Mr. Reap was located in New Jersey.  (Leonardi Decl. at Ex. A).

[10]The transcript from the June 2006 sanctions hearing in North Carolina indicates the office locations for the MDL Plaintiffs' counsel.  (Ex. 1 to Def.'s Mot to Dism. at App. 001-002).

[11]Celanese makes no allegations against any of the Defendants arising out of the depositions taken in Texas.

Litigation in North Carolina.

Second, any communications to or from Texas in this case were simply a consequence of the fortuitous fact that Celanese chose to relocate its legal function to Texas. *WorkplaceUSA, Inc. v. Palmer Plaza Ptrs.*, Civ. No. 3:04-CV-0019-B, 2004 WL 2058780, at *3 (N.D. Tex. Sept. 15, 2004) (finding no specific jurisdiction where the majority of defendant's contacts with the forum were a result of the plaintiff's unilateral activities). Moreover, an exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (finding no specific jurisdiction even though, *inter alia*, defendant had initiated and contemplated a long-term business relationship with a Texas resident and had engaged in communications with that resident in carrying out a contract between the two); *Holt Oil*, 801 F.2d at 778 (finding no specific jurisdiction despite "extensive telephonic and written communication" with a Texas resident); *Spademan*, 772 F.2d at 1193 (finding that mailing payments to Texas, isolated shipment of goods to Texas, and communications to Texas regarding performance of a contract were insufficient contacts for specific jurisdiction).

Third, Plaintiffs argue that Defendant Kaye Scholer's concealment of its alleged discovery misconduct in communications with Celanese in-house counsel in Texas renders it subject to specific jurisdiction in Texas. The Court finds this argument unpersuasive. Even under the most generous reading of the Complaint and the declarations submitted, Celanese has not alleged anything remotely specific to support allegations of non-disclosure. Celanese's claims of malpractice and breach of fiduciary duty center on Kaye Scholer's failure to conduct proper discovery, its affirmative communications with opposing counsel and the MDL Plaintiffs in the Relevant Litigation, and its

representations to the North Carolina court concerning discovery.  (Compl. ¶¶ 2, 46-48, 53-56, 58-59, 62-65, 85, 90, 94-95; Ludwig Decl. ¶¶ 11-12).  This is not a case where a plaintiff alleges that a defendant's misrepresentation is the result of a communication directed at the forum.  Instead, Plaintiff tries the double negative–arguing that Kaye Scholer's communication in the forum is actually a failure to communicate that it had committed breaches of its duty of care and fiduciary duty via misrepresentations and conduct outside of the forum.  Plaintiffs' portrayal of these affirmative communications outside of Texas as breaches of a fiduciary duty for non-disclosure in Texas is simply an unconvincing legal construct.  Second, the lack of attention to discovery underlying Plaintiffs' claims allegedly began in 2003, well before Celanese's move to Texas, and merely continued after Celanese unilaterally chose to relocate.  Thus, to the extent that there were actionable omissions in Texas, those omissions were again the result of Celanese's, not Kaye Scholer's, choice to be in the state.  *Cf. Able Fund v. Dobbins*, No. 3:05-CV-2263-H, 2006 WL 1816430, at *4-7 (N.D. Tex. Jun. 22, 2006)(dismissing case for lack of specific jurisdiction where Texas communications were merely incident to the performance of a contract).

    B.      Origin of Plaintiff's Claims

        In addition to establishing that Kaye Scholer has contacts with Texas, Celanese must establish that its claims arise out of Kaye Scholer's Texas contacts.  *Helicopteros*, 466 U.S. at 413 n.8.  Plaintiffs' claims in this case are all based on three categories of discovery misconduct: (1) failure to search for documents, (2) failure to produce documents, and (3) misrepresenting the document search to the MDL plaintiffs and the North Carolina court.  None of these categories of allegations involve Defendants' acts in Texas.

        First, none of the Kaye Scholer attorneys working on the Relevant Litigation were located

-16-

in Texas.  Second, Kaye Scholer's failure to conduct proper discovery took place primarily in New York where its attorneys practice law and worked on the Relevant Litigation.  Decisions to search for, or not to search for, and to review, or not to review, documents would have been made by attorneys practicing in New York, not Texas.[12]  Third, Kaye Scholer's failure to search for documents involved failures to search Celanese archives in New Jersey and North Carolina.  Fourth, Kaye Scholer's alleged failure to produce relevant documents would have arguably been a failure with respect to the plaintiffs in the Relevant Litigation.  There is no evidence or even any allegation that any of those plaintiffs, or their counsel, were located in Texas.  Fifth, although Kaye Scholer is alleged to have misrepresented the state of discovery and existence of documents throughout the Relevant Litigation, there are no allegations that those Kaye Scholer discovery responses and follow-up letters were directed to any opposing counsel in Texas during the Relevant Litigation.  The only evidence on the location of opposing counsel suggests that counsel was in North and South Carolina and Alabama throughout the Relevant Litigation.  Sixth, the court to whom Kaye Scholer is alleged to have made misrepresentations is in North Carolina.  Seventh, although Kaye Scholer's alleged discovery misconduct continued for years, the majority of all of the misconduct is based on Kaye Scholer's statement that all of the PSF related documents were transferred to KoSa after its 1998

---

[12]"The place where the contract is to be performed...is a weighty consideration" in determining jurisdiction.  *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 94 (5th Cir. 1992).  The place where the contract for Kaye Scholer's representation of Celanese was performed was clearly at Kaye Scholer's offices in New York where the legal strategy was developed, research conducted, communications and responses drafted, and discovery decisions were made and in court in North Carolina where papers were filed and Kaye Scholer appeared for Plaintiffs.  Thus, "any malpractice must have arisen as the result of the attorney's actions, or lack thereof, in [one of those states]."  *Taylor v. Underwood*, No. 3:99-CV-2632-X, 2000 WL 123973, at *3 (N.D. Tex. Jan. 31, 2000) (finding no jurisdiction where the defendants, West Virginia attorneys', communications to the Texas resident plaintiff about their ongoing representation of the plaintiff in litigation in West Virginia were the primary alleged contacts).

purchase of Celanese's PSF business. This statement was originally made in September 2003 Responses to Requests for Production in the Relevant Litigation. The 2003 Response, and even some of its later 2005 repetitions, occurred before Celanese's legal function moved to Texas and/or Celanese in-house counsel in Texas became involved in the Relevant Litigation.

In short, considering that Kaye Scholer's only legitimate alleged contacts with Texas are the direct result of Celanese's unilateral choice to relocate there and that none of the claims against Kaye Scholer appear to be a result of any independent act by Kaye Scholer directed at Texas, Celanese has failed to establish that Kaye Scholer has sufficient minimum contacts with Texas for the exercise of specific jurisdiction. With respect to Defendants Blechman and Bernstein, Celanese alleges no particular acts supporting specific jurisdiction by Mr. Blechman and no acts by Mr. Bernstein that the Court did not consider as part of the acts of Kaye Scholer. Thus, the Court also finds that it lacks specific jurisdiction over the individual defendants for the reasons discussed above regarding Kaye Scholer.

### 3.    General Jurisdiction

Asserting general jurisdiction over a defendant is appropriate only if the defendant's contacts with the forum are of a "continuous and systematic" nature. *Helicopteros*, 466 U.S. at 414-15. As such, "the minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Jones*, 954 F.2d at 1068. "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Tele., Inc. v. MCI Tele., Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). "The contacts must be reviewed in toto, and not in isolation from one another." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).

Celanese argues that the Court has general jurisdiction over Defendant Kaye Scholer, because Kaye Scholer actively solicits business from Texas residents and has generated more than $80 million in gross revenue over the past five years from a combination of representing Texas residents throughout the country or representing foreign residents in litigation in Texas.

Plaintiffs do not dispute that Defendant Kaye Scholer is not a Texas resident, has no offices in Texas, has no partners residing in Texas, and none of the lawyers who worked on the Relevant Litigation are licensed to practice in Texas.  (Leonardi Decl. ¶¶ 3, 4, 13).[13]  According to Kaye Scholer's website, only four of its attorneys are licensed to practice law in Texas (Ludwig Decl. ¶ 5 and Ex. B).  Kaye Scholer also owns no real or personal property in Texas and does not direct specific marketing or advertising to Texas.  (Id. at ¶¶ 6, 8).  In the last five years, the number of Texas residents whom Kaye Scholer has represented constituted only 0.39% of its total client base and accounted for about 2.57% of its total revenue. (Id. at ¶ 9).[14]  Kaye Scholer derived an additional approximately 3.04% of its revenue from representing non-Texas residents in cases in Texas over the last five years.  (Id. at ¶ 10).  Celanese's Complaint contains no allegations concerning Kaye Scholer's contacts with Texas outside of the Relevant Litigation, which as discussed above, consisted solely

---

[13]The Court disagrees with Plaintiffs' assessment that Mr. Leonardi's declaration fails to meet the 28 U.S.C. §1746 requirements because he says that his statements are true and correct "to the best of my personal knowledge and after reasonable inquiry."  The Court finds those qualifications to be consistent with the requirement that declarations be made on personal knowledge and to merely show the source of the information declared to under penalty of perjury.

[14]Defendants attempted to submit a revised declaration of Mr. Leonardi in association with their Reply.  However, under Local Rule 7.2, evidence may not be submitted with a Reply.  Defendants did not move for leave of the Court to file supplemental evidence, and the reply evidence was not considered.  Even if it was considered, the difference in percentages overall for all Texas-related representations is inconsequential to the analysis (5.61% under Leonardi's original analysis compared to 5.57% under the revised declaration).

of some communications with in-house counsel, two depositions, and one meeting at Celanese's offices. Celanese has shown that in 2005, all of the Defendants came to Texas to solicit business from Celanese General Counsel Curt Shaw. (Walker Decl. ¶ 12). Celanese also submitted evidence that Kaye Scholer lawyers have been listed as counsel of record in approximately fifteen cases and participated in four seminars in Texas in the last five years. (Ludwig Decl. ¶¶ 6, 9 and Exs. C, E).[15]

The Court cannot say that the alleged contacts are sufficiently continuous and systematic enough to subject Kaye Scholer to general jurisdiction in Texas. The Fifth Circuit has imposed a high standard for finding general jurisdiction that is not met where, as here, Plaintiff has only shown that Kaye Scholer employees came to Texas very rarely in the last five years and Kaye Scholer generated a relatively small percentage of its total revenue as a result of contact with Texas or its residents. *Johnston*, 523 F.3d at 611-612 (finding no general jurisdiction even though defendant MDS sold products and services to ten different Texas residents, representing about 3% of its business, and traveled to visit those customers and attend trade conventions in Texas); *Central Freight*, 322 F.3d at 381 (finding no general jurisdiction where defendant did not actually operate a business in the state even though it sent sales people to Texas regularly to solicit business and negotiate contracts and arranged for shipments to and from Texas). The Fifth Circuit has also found that contacts which yielded 12.9% of the defendant's revenue for the year were not sufficiently systematic and continuous to support general jurisdiction. *Dalton v. R&W Marine, Inc.*, 897 F.2d

---

[15]The Court notes that although Mr. Ludwig attests that Kaye Scholer has been involved in thirty-four cases in Texas in the last six years, his testimony is based solely on his review of case synopsis printouts from Lexis/Nexis. Setting aside the problems with the admissibility of this "evidence," the Court has independently reviewed the printout and reached a different conclusion as to the number of Texas cases in which Kaye Scholer was involved in the past five years.

1359, 1362 (5th Cir. 1990); *see also Johnston*, 523 F.3d at 613-14 (finding the percentage of sales not substantial enough to create general jurisdiction over defendant MDS Canada even though about ten percent of certain contracts were with doctors in Texas and sales to Texas for four years represented 1.7%, .5%, 1.1%, and 2.5% of its total sales); *Access Tele.*, 197 F.3d at 717 (finding no general jurisdiction although revenue from Texas customers "totaled millions of dollars a month"). *See also LeBlanc v. Patton-Tully Trans., LLC*, 138 F. Supp. 2d 817, 819 (S.D. Tex. 2001) (finding no general jurisdiction even though work performed for Texas residents accounted for 10-15% of the defendant's revenue over the past four years).  Kaye Scholer's derivation of about 5% of its gross revenue from Texas cases or Texas residents, for a total of about $80 million over five years, is not substantial in light of the lack of other contacts initiated by Kaye Scholer in the State.

In *Belin*, the Fifth Circuit even found no general jurisdiction over a defendant who had "arguably continuous" contacts with Texas because those contacts, including carrying malpractice insurance through a Texas law firm, performing legal projects for three years for three different law firms in Texas, giving a seminar in Texas, serving as a consultant to a historical society in Texas for several years, traveling to Texas twice, and giving interviews to Texas reporters, were not substantial. *Belin*, 20 F.3d at 650-51.  Thus, considering *in toto* Kaye Scholer's lack of an office or property in Texas, the dearth of direct marketing to Texas, the minuscule number of Kaye Scholer attorneys licensed to practice in Texas, Kaye Scholer's participation in fewer than one seminar in Texas per year for the last several years, appearances in few Texas litigations, and relatively minor percentage of revenue derived from Texas residents, Kaye Scholer's contacts are too sporadic and insubstantial to subject it to general jurisdiction.

Celanese has also failed to establish general jurisdiction over Defendant Blechman.  Celanese

relies heavily on Blechman's solicitation of business from Celanese in-house counsel in Dallas in 2001 and 2005.  However, neither of those two isolated instances of contact appear to have resulted in any business for Blechman or Kaye Scholer in Texas.  The evidence shows that Blechman has had no personal contacts with Texas and has only been to the State at best a handful of times on business in five years.  (Blechman Decl. ¶¶ 4-9).  Although Celanese again relies on Blechman's communications to counsel in Texas during his representation of Celanese in the Relevant Litigation and other matters, the only evidence shows that those communications to Texas are a result of Celanese's unilateral decision to move to Texas.  Those communications fare no better in supporting general jurisdiction than they did in supporting specific jurisdiction.

Celanese's allegations against Defendant Bernstein also fall short of their mark. With regard to Bernstein, Celanese alleges the same facts discussed above with the addition that Bernstein appeared for two depositions and one meeting in Texas in 2006 in connection with the Relevant Litigation and appeared *pro hac vice* in a case in the Southern District of Texas in 1995.  Bernstein attests that, like Blechman, he is not licensed in Texas, has spent no personal time and has no property in the State, and has visited only a few times on business.  (Bernstein Decl. ¶¶3-9).  Bernstein also testifies that he was relatively uninvolved in the case in which he appeared in the Southern District thirteen years ago. (Bernstein Reply Decl. ¶ 4).  These additional alleged contacts are as sporadic and insubstantial as the other contacts of Defendant Kaye Scholer and cannot be said to constitute continuous contact with Texas.  Celanese has therefore failed to meet its burden of showing that the exercise of general jurisdiction over either of the individual defendants is warranted. In light of the Court's findings that it does not have specific or general jurisdiction over Defendants, the Court need not address whether exercising jurisdiction over Defendants would comport with

traditional notions of fair play and substantial justice.  *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001).

## III.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss is GRANTED with respect to each defendant.  Defendant's alternative Motion to Transfer Venue is DENIED, as the Court finds a transfer unnecessary due to the parties' ongoing case in the Southern District of New York (Civ. No. 08-CV-5547-NRB) concerning Defendants' representation of Plaintiffs in connection with the Relevant Litigation and in other matters.  Considering that the New York case is in its infancy and has been stayed pending resolution of the instant Motion to Dismiss, the Court finds that it is most efficient to allow Plaintiffs to bring the claims asserted here in that existing case in lieu of transferring another matter for consolidation.

Plaintiffs' Motion to Strike/Motion for Leave to File a Sur-reply (doc #28) is also DENIED as moot.  Further, Local Rule 7.1 permits a response and reply to a motion, and the Court finds no good cause to have allowed Plaintiffs to file an additional sur-reply.  Moreover, to the extent that Plaintiffs were concerned with  Defendants' Supplement filed on August 20, 2008, the Court has not considered that Supplement in association with its consideration of the instant Motion.

SO ORDERED.

Dated: October 10, 2008

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE